**SO ORDERED.**

**DONE and SIGNED March 14, 2017.**



_____
**JEFFREY P. NORMAN
UNITED STATES BANKRUPTCY JUDGE**

_____


UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| Donald E. Miner | § | Case Number: 16-10441 |
| Sandra R. Miner | § | |
| Debtors | § | Chapter 13 |

### ORDER DENYING CONFIRMATION

This matter is before the Court concerning the confirmation of the debtors' amended Chapter 13 plan (ECF No. 46). A confirmation hearing was held on March 8, 2017. After considering the pleadings, evidence, testimony, and arguments, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, as incorporated by Federal Rules of Bankruptcy Procedure 7052 and 9014.2. To the extent any finding of fact is construed to be a conclusion of law, it is adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is adopted as such. The Court reserves the

1

right to make any additional findings and conclusions as may be necessary or as requested by any party. The Court also reserves the right to supplement the findings of fact and conclusions of law.

## PROCEDURAL BACKGROUND

The joint debtors, Donald E. Miner and Sandra R. Miner, filed their Chapter 13 petition on March 17, 2016. The debtors' original Chapter 13 plan (ECF No. 8) was filed on March 24, 2016; however, it has been subsequently amended several times. The most recently amended plan (ECF No. 46) provides for a monthly plan payment of $2,100.00 for six months and then $2,155.00 per month for 54 months. The debtors are above median income and their applicable commitment period is 60 months.[1] Their amended budget (ECF No. 49) filed on September 14, 2016, indicates Mr. Miner has been employed for five years and that his wife is unemployed. Mr. Miner's gross monthly employment income is estimated at $5,788.61, and his net monthly income from his second job is $525.00 per month. He lists two payroll deductions related to retirement in his budget, with the first being a voluntary 401(k) contribution of $700.82 per month and the second being a 401(k) loan repayment totaling $451.47 per month. Ms. Miner's income is limited to Social Security benefits totaling $1,253.00 per month. The budget contains a comment stating "Debtor has a 401(k) loan which will be paid off 2/29/2020, which is not disposable income due to the Debtors' use of social security income."

All objections to confirmation have been resolved or withdrawn, and the Chapter 13 Trustee recommended the debtors' plan for confirmation. Procedures for the confirmation of Chapter 13 plans are set forth in this Court's Standing Order Adopting Mandatory Form Chapter 13 Plan Effective August 1, 2015. That Standing Order provides the following:

> Plans or plan modifications that appear to the court to meet all statutory tests for confirmation and to which no objections to confirmation have been filed may be

---

[1] "Applicable commitment period" is defined in 11 U.S.C. § 1325(b)(4), and is three years for debtors below median income and five years for debtors above median income.

> confirmed on the consent docket without actual presentation. Cases in which plans are confirmed or modified on the consent docket may be read into the record at the confirmation hearing, may be posted on the court's or trustee's website any time prior to the scheduled confirmation hearing date, or maybe listed on the hearing docket. It is the duty of the debtor's attorney, the trustee, or parties in interest to inform the court of any existing bar to confirmation. Cases with pending objections will not be placed on a consent docket. Deficiencies in the plan noted by the trustee at the § 341 meeting must be cured in a manner which is evident upon review of the case file or the plan will not be scheduled on a consent docket.

Accordingly, unopposed Chapter 13 plans which the Chapter 13 Trustee recommends for confirmation are struck from the docket.[2] Thereafter, the Trustee uploads a confirmation order and the Court conducts an *in camera* review of the debtor's Chapter 13 plan and schedules. Given the Supreme Court's ruling in *United Student Aid Funds, Inc. v. Espinoza*, 559 U.S. 260 (2010), this Court has an independent duty to review all Chapter 13 plans. An important holding in that case was "whether or not an objection is presently lodged in this case, the Court retains the authority to review [the Chapter 13] plan and deny confirmation if it fails to comply with the confirmation standards of the Code." *Id*. Once the Court has conducted its review, it will sign the order confirming the Chapter 13 plan if it has no independent concerns or objections. Where it appears the confirmation standards may not have been met, the Court will typically set the case for an evidentiary hearing or may deny confirmation outright.

On January 16, 2017, the Court conducted an *in camera* review and had concerns the debtors' plan may not have met the requirements for confirmation. The Court reviewed the debtors' budget and noted the aforementioned 401(k) deductions. Typically, when a 401(k) loan is fully repaid and a debtor's income increases, this Court requires that the Chapter 13 plan payment increase by the amount of the loan payment. This requirement of a "step up" in plan

---

[2] The confirmation docket is posted on the Court's website at http://www.lawb.uscourts.gov/content/judge-jeffrey-p-norman.

3

payment was missing from the debtors' Chapter 13 plan. Also, the Court noted that in the context of the majority of Chapter 13 cases, the debtors were contributing a very high percentage to their 401(k) plan. Therefore, the Court set this matter for hearing and noted its concerns.

## FINDINGS OF FACT

Mr. Miner is 62 years old and Ms. Miner is 52. The debtor is currently employed at Rose Neath Funeral Home. He also has a second job at a funeral home, where he fills in for his son on a part time basis. The joint-debtor has not worked for five years. The debtor's testimony confirmed his primary gross employment income of $5,788.61 per month, and his additional net income from a second job of $525.00 per month. The debtor also testified as to his wife's lack of employment and her current Social Security income of $1,253.00 per month.

The debtor testified he voluntarily contributes $700.82 per month to his 401(k) plan. He also has a 401(k) loan payment of $356.18 per month, which is also deducted from his paycheck. The debtor's 401(k) deductions total $1,137.20 per month. The debtor did not testify as to when the 401(k) loan will be paid in full, but the Court notes that Schedule J indicates it will be February 29, 2020. The combined 401(k) deductions total 18% of the debtor's gross income from his primary employment.

The debtor testified that he had $35,000.00 in his 401(k) plan, and that he had been contributing $700.82 per month for the five years he has been with his current employer. However, the debtor's computation does not appear to be accurate. The Court notes that every budget filed by the debtors since March 17, 2016, indicate Mr. Miner has been employed for five years by his current employer. Therefore, the Court concludes the debtor has actually been employed by his current employer for more than five years, and perhaps more than six years. Accordingly, a voluntary monthly contribution of $781.02 to a 401(k) for just five years, ignoring any additional

4

months of employment, would total $42,049.20. This amount, plus the 3% employer match (discussed below), plus investment returns, would easily exceed $50,000.00. The Court can only conclude that the debtor has not been contributing $700.82 per month to his retirement plan over his five plus years of employment as he testified.[3]

The debtor also testified that he did not know the purpose of his 401(k) account. Only after his attorney asked him leading questions did he testify the account was for retirement. This pattern, which undermines the witness's credibility, continued throughout the examination. For example, the debtor testified that did not know the amount of his 401(k) matching, but was then led by counsel to testify the employer match was 3%. He testified that he had insufficient funds saved for retirement, but also testified he had no knowledge of when and how much Social Security income he would receive in retirement. He also offered no testimony or discussion of his wife's Social Security income in retirement.

Mr. Miner testified that he and his wife keep separate bank accounts and that they both contribute to household expenses. He did not explain which funds are deposited into each bank account or how the expenses are divided. The debtor testified he filed bankruptcy because his wife lost her job and that bills were "piling up," but he later testified that she lost her job five years ago. He did not offer testimony concerning what Ms. Miner's income was when she was employed, nor did he discuss how their income was affected when she lost her job. He did testify that if he did not contribute to his 401(k), his wife would instead spend the money on bills; however, he did not testify how this would occur since they maintain separate bank accounts to cover their own

---

[3] The debtor does have a 401(k) loan, which in theory could reduce his current 401(k) balance depending on how the 401(k) administrator reports the loan. However, this Court's review of 401(k) statements has generally shown that these statements provide a gross amount less loan amounts. In this regard, the debtor's total lack of testimony regarding the date of the loan, the loan amount, and how long he has been making payments makes an exact determination of the plan balance impossible. No 401(k) statement or evidence of 401(k) contributions was introduced into evidence other than the debtor's testimony.

expenses. The Court notes that the debtors' have filed a budget that provides for full payment of all of their ongoing expenses and that the joint debtor's job loss is too remote to be considered a major factor in the joint debtors bankruptcy filing.

During his testimony, Mr. Miner did not address his 401(k) loan. The Court asked the debtor about the amount of the loan, and the debtor did not know. He did not indicate when or why the loan was incurred, or how the funds were used. Also, as mentioned before, he did not state when the loan would be paid in full. The Court finds the debtor well-meaning, but unreliable. He made contradictory assertions, and displayed a general lack of knowledge of certain facts. The joint-debtor, Ms. Miner, did not appear at the hearing or give testimony. Her absence was not explained.

## CONCLUSIONS OF LAW

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This particular dispute is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) because it affects the administration of this Chapter 13 estate, as well as plan confirmation. Finally, this dispute is core under the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.),* 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.").

This matter concerns legal issues relevant to the local bankruptcy bar and the Chapter 13 Trustee. In the Shreveport Division of the Western District of Louisiana, the vast majority of bankruptcy cases filed are under Chapter 13. During the month of February 2017, the percentage of Chapter 13 cases filed in this division reached a peak of 86%. The issue in this case, namely

6

the allowable amount of voluntary retirement contributions, is an issue in numerous Chapter 13 cases in this division.

During closing arguments, the Court asked the Chapter 13 Trustee to explain how he evaluated voluntary contributions to retirement plans. He explained that for low distribution plans (i.e., plans that pay little or no money to unsecured creditors), he allowed a 3% contribution for retirement plans where employers did not match contributions, and a 6% contribution where employers did match contributions. He also indicated that in cases such as this one, he allowed an increased contribution due to Social Security income. The Court then asked if his determination changes when the Social Security recipient is the joint-debtor, while the debtor makes the retirement contributions. He stated this did not change is determination.

Accordingly, the Court will address each of the following legal issues, which likely affect many other Chapter 13 cases:

(a.) Have the debtors met their burden of proof for confirmation?

(b.) Are voluntary post-petition 401(k) contributions disposable income?

(c.) Are voluntary post-petition 401(k) contributions allowed in Chapter 13?

(d.) Can 401(k) contributions be limited based on good faith?

(e.) Can a debtor use a joint debtor's Social Security income to offset any limits imposed by (b) or (d) above?

**The debtors have failed to meet their burden of proof for confirmation.**

The debtors have the burden of proving their Chapter 13 plan meets the requirements for confirmation pursuant to 11 U.S.C. §§ 1322 and 1325(a). *See Education Assistance Corp. v. Zellner*, 827 F.2d 1222 (8th Cir. 1987); *First Nat'l Bank of Boston v. Fantasia* (*In re Fantasia*), 211 B.R. 420 (B.A.P. 1st Cir. 1997); *In re Huerta*, 137 B.R. 356 (Bankr. C.D. Cal. 1992); *In re Lindsey*, 122 B.R. 157 (Bankr. M.D. Fla. 1991); *In re Girdaukas*, 92 B.R. 373 (Bankr. E.D. Wis.

7

1988); *In re Hieb*, 88 B.R. 1019 (Bankr. D.S.D. 1988); *In re Hogue*, 78 B.R. 867 (Bankr. S.D. Ohio 1987); *In re Crompton*, 73 B.R. 800 (Bankr. E.D. Pa. 1987); *In re Fries*, 68 B.R. 676 (Bankr. E.D. Pa. 1986); *In re Gathright*, 67 B.R. 384 (Bankr. E.D. Pa. 1986). The Court finds the debtors have not met their burden of proof as to plan confirmation pursuant to 11 U.S.C. § 1325. The Court makes this determination due to the inconsistencies in the debtor's testimony, the failure of the debtor to have even a basic knowledge of facts, the debtors' failure to introduce documentary evidence such as 401(k) statements, and counsel's failure to rehabilitate the witness. Specifically, the debtor's unreliable testimony, which was the only evidence presented, cannot be the basis for plan confirmation. The debtor has failed to prove that "the plan complies with the provisions of this chapter and with the other applicable provisions of this title." *See* 11 U.S.C. § 1325(a)(1). The Court again notes that the joint debtor did not appear or testify, and her absence was unexplained. Confirmation of a Chapter 13 plan cannot be supported by a single unreliable witness.

**Post-petition voluntary 401k contributions are disposable income.**

The Court finds further grounds to deny confirmation based on the disposable income requirement in the Code. Debtors have claimed Mr. Miner "has a 401(k) loan which will be paid off 2/29/2020, which is not disposable income due to the Debtors' use of social security income." (ECF No. 49, pg. 6). The Court finds this statement to be untrue.

Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), both 401(k) loans and 401(k) contributions were considered "disposable income." However, BAPCPA added two exclusionary sections, 11 U.S.C. §§ 541(b)(7) and 1322(f), which affected 401(k) contributions and loans.

There seems to be little controversy concerning 11 U.S.C. § 1322(f), which provides that "[a] plan may not materially alter the terms of a loan described in section 362(b)(19) and any amounts required to repay such loan shall not constitute 'disposable income' under section 1325." So, a debtor's voluntary repayment of a 401(k) loan is not treated as disposable income. The Court is unaware of any dispute regarding this provision, except as it relates to the recapturing of loan repayment amounts in Chapter 13 plans after the loan has been fully repaid. In *Seafort v. Burden* (*In re Seafort*), 669 F.3d 662 (6th Cir. 2012), the Sixth Circuit held "that post-petition income that becomes available to debtors after their 401(k) loans are fully repaid is 'projected disposable income' that must be turned over to the trustee for distribution to unsecured creditors pursuant to §1325(b)(1)(B) and may not be used to fund voluntary 401(k) plans." This Court, like many other courts, has accepted this holding.

To the contrary, courts have had differing interpretations of 11 U.S.C. § 541(b)(7). That Code section states the following:

    (b) Property of the estate does not include—

    (7) any amount—
        (A) withheld by an employer from the wages of employees for payment as contributions—
            (i) to—
                (I) an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986;
                (II) a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or
                (III) a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986;
                except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325(b)(2); or
            (ii) to a health insurance plan regulated by State law whether or not subject to such title; or

Several bankruptcy courts have held that the plain language of this section allows a Chapter 13 debtor to make voluntary post-petition contributions to a qualified retirement plan up to the maximum amount permitted under nonbankruptcy law, regardless of whether the debtor was making such contributions at the time of filing. The only limitation is the good faith requirement imposed by 11 U.S.C. § 1325(a)(3). Others courts have held that § 541(b)(7) does not authorize a Chapter 13 debtor to make voluntary post-petition retirement contributions in any amount. This is the view of the *Seafort* court, which stated the following [internal citations, quotation marks, and alterations omitted]:

> We begin with the assumption, as we must, that Congress's placement of 401(k) loan repayments within Chapter 13 itself and placement of the exclusion for voluntary retirement contributions elsewhere was deliberate. Where Congress includes particular language in one section of a statute but omits it in another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion. It is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another.
>
> The easy inference is that Congress did not intend to treat voluntary 401(k) contributions like 401(k) loan repayments, because it did not similarly exclude them from "disposable income" within Chapter 13 itself.

In footnote seven of the *Seafort* opinion, which may be considered non-binding dicta, the Sixth Circuit states the following:

> The Trustee "concedes" that if a debtor making voluntary retirement contributions when the bankruptcy petition is filed, such continuing contributions may be excluded from disposable income. We do not agree with this assertion, for the reasons stated in *Prigge*.[4] However, our view is not relevant here, because this issue is not presently before us. *Id*.

This footnote has been criticized by some courts, and adopted by others. In fact, the *Seafort* court stated that "[a]lthough no circuit has addressed the question presented here, several bankruptcy and district courts have, with divergent results." *Id*. This Court need not opine on the

---

[4] *In re Prigge*, 441 B.R. 667, 669 (Bankr. D. Mont. 2010).

10

divergent opinions reached by various courts. The opinions in *In re Egan*, 458 B.R. 836 (Bankr. E.D. Pa. 2011) and *In re McCullers*, 451 B.R. 498 (Bankr. N.D. Cal. 2011), as well as *Seafort*, do an excellent job summarizing the various competing views.

So, while the Sixth Circuit is the only circuit court which has considered the issues raised in this case, two other circuit courts, including the Fifth Circuit, have adopted other holdings in *Seafort*. *See Maharaj v. Stubbs & Perdue, P.A.* (*In re Maharaj*), 681 F.3d 558 (4th Cir. 2012): *In re Lively*, 717 F.3d 406 (5th Cir. 2013). Both *Maharaj* and *Lively* cite *Seafort* concerning issues regarding statutory interpretation. They cite the *Seafort* court's interpretation of 11 U.S.C. § 1306(a), which expressly incorporates 11 U.S.C. § 541, as precedent. Of course, the *Seafort* court ultimately ruled that, based on the language and structure of Chapter 13 and § 1306, Congress intended to exclude from disposable income and projected disposable income only voluntary retirement contributions already in existence at the time the petition is filed. Voluntary retirement contributions post-petition would be considered disposable income. There are no circuit court opinions critical of *Seafort*. Therefore, based on the holding in *Seafort*, this Court, holds that post-petition voluntary 401k contributions are **not** excluded from disposable income.

**Voluntary 401(k) contributions are allowed in Chapter 13.**

This Court does not go so far as to hold that 11 U.S.C. § 541(b)(7) does not authorize a Chapter 13 debtor to make some limited reasonable voluntary post-petition retirement contributions. BAPCPA changed the definition of "disposable income." Under pre-BAPCPA law, disposable income was defined as "income which is received by the debtor and which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor." Post-BAPCPA, amounts reasonably necessary to be expended by debtors in a Chapter 13 case were changed, and a "means test" was enacted. Post-BAPCPA, debtors above the

median income, like the debtors in the instant case, that have "current monthly income" greater than the applicable median family income are limited to expenses set forth in the 2016 Allowable Living Expense National and Local Standards, which are referenced in 11 U.S.C. § 707(b)(2)(A)(ii)(I). These standards are published on the United States Trustee's website.[5] For debtors with current monthly income ("CMI") less than the applicable median family income (i.e., below median income debtors), reasonable expenses are defined under 11 U.S.C. § 1325(b)(2)(A) and (B). Below median income debtors are only allowed to deduct amounts reasonable and necessary for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation. 11 U.S.C. § 1325(b)(2)(A). Further, if the debtor is engaged in business, the debtor may expend amounts for the payment of expenditures necessary for the continuation, preservation and operation of such business. 11 U.S.C. § 1325(b)(2)(B). These expenses for below median income debtors only limit retirement contributions (expenses) to amounts reasonable and necessary for the maintenance or support of the debtor or a dependent of the debtor. In effect, BAPCPA did not change the pre-BAPCPA analysis for deductible expenses in Chapter 13 for below median income debtors. So, while pre-BAPCPA 401(k) contributions and loans were considered disposable income, the pre-BAPCPA code provisions only limited expenses for loans and voluntary 401(k) contributions to amounts "reasonable and necessary." Such expenses were not prohibited per se, and some courts allowed reasonable deductions for 401(k) contributions and loans. In contrast, above median income debtors are currently only allowed to deduct amounts reasonably necessary which are calculated by applying the mathematical "abuse" test set forth in 11 U.S.C. § 707(b)(2)(A) and (B). Under this test, above median income debtors'

---

[5] The National and Local Standards are in the Means Testing section on the United States Trustee's website at https://www.justice.gov/ust/means-testing/20161101 and are typically updated biannually.

12

expenses are limited, in certain categories, to amounts set forth in the National and Local Standards. These standards **do not** include any voluntary retirement contributions.

However, this Court interprets the Supreme Court's holding in *Hamilton v. Lanning*, 560 U.S. 505, (2010) as providing grounds for allowing limited and reasonable voluntary contributions to retirement plans. In *Lanning*, the U.S. Supreme Court endorsed the "forward-looking" approach to determine projected disposable income at confirmation in Chapter 13. Although it was clear that the expense side of the projected disposable income calculation was not at issue before the lower court, the Supreme Court granted certiorari more broadly by stating the following:

> Petition for writ of certiorari to the United States Court of Appeals for the Tenth Circuit granted limited to the following question: Whether, in calculating the debtor's "projected disposable income" during the plan period, the bankruptcy court may consider evidence suggesting that the debtor's income or expenses during that period are likely to be different from her income or expenses during the pre-filing period. *Hamilton v. Lanning*, 558 U.S. 989 (2009).

Therefore, the Supreme Court would ultimately "decide how a bankruptcy court should calculate a debtor's 'projected disposable income.'" The Court held "that when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or *expenses* that are known or virtually certain at the time of confirmation." *Lanning*, at 524. So, this Court concludes it may allow a debtor a limited reasonable voluntary retirement contribution because it can account for changes in the debtor's expenses that are known or virtually certain at the time of confirmation. Specifically, the Court can provide for a voluntary retirement deduction even if this expense is not provided for by the "means test" and the Allowable Living Expense National and Local Standards, which are referenced in 11 U.S.C. § 707(b)(2)(A)(ii)(I).

It would be nearly impossible to find anyone who would disagree that voluntarily saving for retirement is a prudent and wise financial decision. Almost every debtor who provides for a

voluntary retirement deduction in their Chapter 13 case is already enrolled in such a plan, making a finding that the voluntary retirement expense is known or virtually certain at the time of confirmation an easy determination. While maximizing retirement savings outside a bankruptcy case is prudent, this Court believes that maximizing retirement savings inside a bankruptcy must come with reasonable limits. Therefore, the Court adopts a realistic approach which accounts for a debtor's need to save for retirement, but also respects the policy that debtors who can afford to repay creditors do so. The heart of the consumer bankruptcy reforms in BAPCPA consists of the implementation of an income and expense screening mechanism ('needs-based bankruptcy relief' or 'means testing'), which is intended to ensure that debtors repay creditors the maximum they can afford. *Hersh v. United States*, 553 F.3d 743, 761 (5th Cir. 2008).

This Court has already found that when known or virtually certain circumstances dictate, it can deviate from the national and local standards for a debtor's expenses in above median income cases. So, for example, this Court often deviates from these standards due to large automobile insurance expenses contained in budgets. *See e.g., Harrison*, Case No. 16-10950, ECF No. 42. Automobile insurance expenses are quite large in this division, and often exceed $300.00 per month. This is due to the automobile insurance market in Louisiana, as well as each debtor's individual driving records. In *Harrison*, this Court held the following:

> In each of these cases, the debtor's budgeted automobile insurance expenses are large numbers and it would be impossible or near impossible in these cases for a debtor to operate a vehicle on just the Local Standard of $220.00 for one vehicle or $440.00 for two vehicles. The IRS Collection Standards for Operating Costs provides that a taxpayer is allowed operating costs as allowed by the Local Standard or the amount actually spent for operating costs, whichever is less. The Court recognizes the harshness of this standard and that it must allow for certain flexibility for the cost of insurance in total transportation expense. Otherwise, many cases would simply be non-confirmable.

This Court sees no difference in allowing increased automobile expenses in above median income cases and also allowing a reasonable and limited voluntary retirement contribution.

Irrespective of the debtors' failure to meet their burden of proof, the Court finds the retirement contribution of $781.02 per month to not be sufficiently limited and reasonable under this holding. Further, the Chapter 13 Trustee's suggested allowance of 6% is unreasonable. In this case, the Court would suggest that a 3% contribution is reasonable.

**Voluntary 401(k) retirement contributions are limited by good faith.**

The Court also holds that contributions to retirement accounts are subject to the good faith requirement in 11 U.S.C. § 1325(a)(3). That Code section states that "the court shall confirm a plan if [it] has been proposed in good faith and not by any means forbidden by law." Good faith is mandatory for confirmation. Even if this Court's analysis under *Seafort* is ignored, the requirement of "good faith" for voluntary retirement contributions has been applied by numerous courts. *See, e.g., In re Vanlandingham*, 516 B.R. 628 (Bankr. D. Kan. 2014); *In re Johnson*, 346 B.R. 256, 263 (Bankr. S.D. Ga. 2006).

In an effort to reduce § 1325(a)(3) to a concrete test, many courts have set forth factors in considering good faith. The number of factors vary. The factors most often cited are the twelve factors used by the Eighth Circuit in United *States v. Estus* (*In re Estus*), 695 F.2d 311 (8th Cir. 1982), or the ten factors used by the Eleventh Circuit in *Kitchens v. Georgia Railroad Bank & Trust* Co. (*In re Kitchens*), 702 F.2d 885 (11th Cir. 1983). Allowing for consolidation, the good faith factors can be summarized as follows:

    1. Frequency of filing bankruptcy;
    2. Accuracy of petition, schedules, statement and testimony;
    3. Burden of administration;
    4. Motivation and sincerity in filing Chapter 13, including the following:
        a. Prepetition conduct and misconduct;
        b. Debt non-dischargeable in Chapter 13 or Chapter 7 case;

    c. Timing of petition to interrupt other events;
    d. Nature and extent of financial problems;
  5. Degree of effort, including the following:
    a. Duration of plan;
    b. Percentage repayment of debt;
    c. Income, expenses, lifestyle and luxuries.

  This Court cannot determine whether the debtor is proceeding in good faith in this case. Mr. Miner's assertion that he has contributed $700.82 per month to his retirement plan over five plus years appears to be untrue. So, the accuracy of the debtor's testimony is questionable. Many courts hold that debtors may continue to make voluntary contributions to their retirement plans if the debtor was making contributions in comparable amounts pre-petition. While this Court does not adopt this holding, the debtor's untruthfulness, whether intentional or unintentional, prevents this Court in part from finding the plan has been proposed in good faith. Other factors the Court has considered in making such a determination include the following: (1) the lack of testimony regarding the debtor's 401(k) loan, (2) the lack of credible testimony regarding the cause of the debtors' bankruptcy filing (the reason given was Ms. Miner's unemployment, which has lasted five years and is remote), (3) the contradictory testimony of the debtor, (4) the percentage of repayment into the debtor's 401(k) plan, and (5) the lack of documentary evidence.

**The debtor may not offset his increased 401(k) contributions with his wife's Social Security income.**

  Irrespective of this Court's adoption of the holding in *Seafort*, along with the additional "good faith" requirement, the Court must address the debtors' argument that they may offset Mr. Miner's increased 401(k) contribution based on his wife's Social Security income. The Court rejects this argument. The debtors cite *Beaulieu vs. Ragos (In re Ragos)*, 700 F.3d 220 (5th Cir. 2012), for the proposition that it is the "[d]ebtors' choice to use *their* Social Security Income to fund *their* 401k plan [emphasis provided]." They ignore the fact that the 401(k) plan belongs to

Mr. Miner and that the Social Security income belongs to Mrs. Miner. Joint cases are not consolidated; instead, they are merely jointly administered. Joint administration of Chapter 13 cases is governed by 11 U.S.C. § 302. The Bankruptcy Code does not automatically consolidate Chapter 13 estates; rather, it provides for the coordinated administration of two presumably related cases. *In re Fernandes*, 346 B.R. 521 (Bankr. D. Nev. 2006). Joint cases can be split into two separate cases at any time, as typically occurs when a joint case is filed and the debtors later divorce or separate. Joint administration combines the estates only for administrative purposes by using a single docket. It does not merge assets and liabilities, and creditors of each individual debtor continue to look to that debtor for payment of their claims. *In re Brown*, 2009 WL 7231290, *2-*3 (Bankr. D.S.C. 2009). This Court does not view the debtor and the joint-debtor as a single debtor with combined resources and debts.

*In re Ragos* holds that Social Security income is not "disposable income"[6] and that Social Security benefits are not subject to the operation of any bankruptcy law. 700 F.3d at 223. This Court agrees and will not require the joint-debtor to contribute her Social Security income to the payment of her creditors or to her bankruptcy plan.

This opinion should not be read as a requirement that the joint-debtor pay any Social Security income to her creditors through the plan or that the joint-debtor be forced to contribute to an increased plan payment. She may contribute such income voluntarily, but she alone makes the decision. However, this opinion should be interpreted to require the debtor, who is without his own Social Security income, to limit his voluntary retirement contributions. This is because these

---

[6] Though "projected disposable income" is not defined in 11 U.S.C. § 1325(b)(1), the term "disposable income" is defined in the statute's very next provision. The term "disposable income" means current monthly income received by the debtor less amounts reasonably necessary for certain enumerated expenses. 11 U.S.C. § 1325(b)(2).

voluntary 401(k) contributions constitute disposable income and are also subject to good faith limitations.

It is also important that that this Court not permit something in a Chapter 13 context which cannot be done outside bankruptcy. The joint-debtor cannot contribute to her husband's 401(k) outside of bankruptcy. His contributions are limited by law to his earned income and the contribution limits set forth by the Internal Revenue Code.[7] Outside bankruptcy, the joint-debtor cannot directly contribute to her husband's 401(k) retirement plan using her Social Security income. This does not eliminate the joint-debtor's options concerning retirement savings. This Court has no objection to the joint-debtor using her Social Security income, which is not disposable income and not subject to any bankruptcy restrictions, to contribute to her retirement plan as allowed by law. The Kay Bailey Hutchinson Spousal IRA allows a spouse with no earned income to contribute to an IRA up to a limit of $5,500.00, or $6,500.00 if you are age 50 or older. While there are limits on the contributions to a spousal IRA, including amounts contributed by a spouse to an IRA or 401(k), the Court's calculation is that the joint-debtor could contribute as much as $4,416.10 in future years to a spousal IRA assuming the debtor contributes 3% to his 401(k).[8]

The Court also rejects the debtor's argument that their combined income is effectively a "pot" of income from which Ms. Miner's Social Security can be used to pay any expenses, including an expense for the debtor's voluntary 401(k) contribution. The debtor testified that he and his wife keep separate bank accounts and that they both contribute to household expenses. While he did not testify concerning which funds are deposited into each bank account or how the

---

[7] *See* https://www.irs.gov/retirement-plans/401k-resource-guide
[8] See IRS Publication 590-A. The joint debtor's contribution would be limited in 2016 and 2017 based on the amounts already contributed by the debtor to his 401(k).

18

expenses are split between them, it was clear that their funds are not deposited into the same account and not used as a "pot" to pay expenses.

## CONCLUSION

The Court feels compelled to offer guidance to the Chapter 13 Trustee, debtors, creditors and the bar as to amounts the Court considers reasonable given this holding. Accordingly, the Court presumes that a 3% voluntary contribution to a retirement plan would be reasonable in any Chapter 13 case filed in this division. Amounts exceeding 3% may be reasonable based on a debtor's specific circumstances, which the Court and the Chapter 13 Trustee will evaluate on a case by case basis and using a "totality of the circumstances" approach.

**ACCORDINGLY, IT IS ORDERED** that confirmation of the debtors' Chapter 13 plan is denied.

**IT IS FURTHER ORDERED** that the debtors shall file an amended plan within 14 days of the date of entry of this order or the Chapter 13 Trustee may upload an order of dismissal.

###